Webster **HARDWICK**, Jr., Plaintiff-
Appellant,

v.

Bernard **HURLEY** and Steve Seno,
Defendants-Appellees.

No. 12958.

United States Court of Appeals
Seventh Circuit.

May 2, 1961.

Ernst Liebman, Donald Page Moore,
Chicago, Ill., for plaintiff-appellant.

Harry H. Pollack, Asst. Corp. Counsel,
Chicago, Ill., for appellees.

Before DUFFY and CASTLE, Circuit
Judges, and MERCER, District Judge.

DUFFY, Circuit Judge.

This is a suit for damages brought
under the Federal Civil Rights Acts, 42
U.S.C.A. §§ 1983, 1985 and 1986. The
defendants are Chicago police officers.
The District Court dismissed the com-
plaint for failure to state a claim under
the Act.

On December 6, 1958, about 2:45 a. m.,
plaintiff "while to some degree under the
influence of alcohol, was driving his car
at an excessive rate of speed * * * "[1]
on Halsted Street in the City of Chicago.
The defendant police officers stopped
plaintiff, placed him under arrest and
took him to a police station.

Plaintiff was ordered by defendants to
expel his breath into a long rubber tube
connected with a mechanical device
known as a "Harger Drunkometer" which
was used by the Chicago Police Depart-
ment to measure the alcoholic content of
an individual's breath. Plaintiff refused
to blow into the tube and stated to the
officers that he would not take the Harger
test.

The complaint alleges the police officers
called plaintiff a "wise guy" and proceed-
ed to batter him with their fists, to stomp
upon him and to kick him. The beating
was inflicted, so the complaint charges,
with the intent of punishing plaintiff for
his refusal to incriminate himself by
taking the Harger test. The complaint
then charges the acts of the defendants
were committed in the course of perform-
ance of their duties as Chicago police of-
ficers, and were committed under color of
state law.

The complaint disclosed that in Count
1, plaintiff alleged the beatings inflicted
upon him violated his due process rights
under the Fourteenth Amendment which,
plaintiff says, states a claim under 42
U.S.C.A. § 1983. In Counts 2 and 3, the
complaint charges violation of sections
1985 and 1986. However, on oral argu-
ment before this Court, counsel for plain-
tiff limited plaintiff's claim for recovery
to the liability imposed by section 1983.

Prior to the decision of the Supreme
Court in Monroe v. Pape, 365 U.S. 167, 81
S.Ct. 473, 5 L.Ed.2d 492, and following
repeated decisions of our Court such as
Stift v. Lynch, 7 Cir., 267 F.2d 237, and
Monroe v. Pape, 272 F.2d 365, this Court
would have sustained the District Court
in dismissing the complaint. Our then
understanding of the law is well express-

---

1. Quoted from plaintiff's brief.

ed in Footnote 68 of Justice Frankfurter's dissent in Monroe v. Pape, 365 U.S. at page 240, 81 S.Ct. at page 513: "Most courts have refused to convert what would otherwise be ordinary state-law claims for false imprisonment or malicious prosecution or assault and battery into civil rights cases on the basis of conclusory allegations of constitutional violation."

The real issue now before us in the instant case is whether Monroe v. Pape can be distinguished so as not to be applicable to the case at bar.

Counsel for defendants argue that Monroe v. Pape involved an unlawful search and seizure which immediately involved constitutionally protected rights. Counsel insist that what we have here is an ordinary assault and battery case which should be tried in the state courts. They point out that no confession resulted from the alleged beating and insist that no constitutional right of plaintiff was violated.

A broad interpretation of the Supreme Court's decision in Monroe v. Pape may well open the flood gates and bring into the federal trial courts thousands of assault and battery cases that should never be there. In metropolitan areas where many arrests are made daily, cases based upon this kind of claim may well completely jam what are already crowded trial calendars. Police officers, in making arrests, are often required to use force, and for their own safety, to make search of the persons whom they have arrested. Only a small degree of imagination is required for these prisoners to develop an ordinary arrest into a claim that an attempt was made to force confessions, or to invade other constitutional rights.

The majority opinion in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, makes frequent reference to United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, and Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. The concurring opinion of Justice Harlan ends with these words: " * * * I agree that we should not now depart from the holdings of the Classic and Screws cases." 365 U.S. at page 202, 81 S.Ct. at page 492.

In the Screws opinion, 325 U.S. at page 108, 65 S.Ct. at page 1039, we note the following: "We agree that when this statute is applied to the action of state officials, it should be construed so as to respect the proper balance between the States and the federal government in law enforcement. Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States. * * * The Fourteenth Amendment did not alter the basic relations between the States and the national government. * * * Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of those delegated powers, has created offenses against the United States."

With all due respect to the professed loyal adherence of the Court to its holdings in Classic and Screws, it does seem the foregoing quotation demonstrates that some departure has been made in Monroe v. Pape.

The complaint in the case at bar does not state specifically that the beating of plaintiff was for the purpose of causing him to incriminate himself. Possibly the allegation of the complaint that the purpose was to punish the plaintiff for his refusal to incriminate himself is saying the same thing backward.

In Monroe v. Pape, the Court said that section 1979 (1983) should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. This could be read to mean that in the opinion of the Supreme Court it wouldn't make any difference what purpose the officers had in striking or beating the plaintiff. However, it is difficult to be-

lieve that the Supreme Court intended to go to the extent, for instance, of saying that an officer who struck a prisoner in self defense was, in some way, violating the constitutional rights of the prisoner.

In the case at bar, the complaint did state that the acts of the defendants constituted a violation of the Fourteenth Amendment. It also stated the purpose was punishment due to plaintiff's refusal to incriminate himself by taking the Harger Drunkometer test. Under Monroe v. Pape we see no alternative to reversing the order of dismissal of the complaint and directing that a trial be held upon the merits.

Reversed and remanded.